Good morning. We are convened to hear the case of Secretary of Labor v. Altor, Inc., Avcom, Inc., et al. Mr. Gottlieb. He wanted to go first because he had made the motion. Yeah, my minute showed Mr. Gottlieb as first. I defer to what the court wants. It ought to be, I think we ought to hear from counsel for Altor, Avcom, Sites. Thank you, Your Honor. Paul Sands, III. I'm going to address him in positive. I'll let him speak and respond as he moves. Good morning, Your Honors. We're here today to move to confirm in part and reject in part the report and recommendation of the master, which was dated March 22, 2017. Three aspects of the R&R we would ask that you confirm. The first is that Avcom is not- Before we get to that question, Mr. Sanders, the resolution of those questions, the one significant legal question that seems to exist here is what is the applicable standard for our review? And that would seem perhaps to be unsettled. So can you help us with that? Yes. We have factual findings made by a special master. That's correct. Delivered to us. So what do we do with them? Well, under the NLRB case, as Your Honors are aware, there was an understanding that even though federal rules did not apply to this court, they were applied by analogy. And at that time, Rule 53 held master's review was clearly erroneous. I don't think there's any question about that. Since that time, in 2003, the rule was amended. And when you look into the reason for the amendment, I think the overwhelming background is that masters have done more substantive factual and legal findings since their use has begun. Might that not violate Article 3, however? Well, but I direct Your Honors respectfully to this court's case, McAllen v. Commissioner of New Jersey Department of Corrections, 419 Fed App, Appendix 301, where this court said, and that was a case where the facts were stipulated. And the court said, but whether facts support a cause of action involves application of law to the facts, and we will review issues of law de novo looking directly to the special master's binding factual findings to determine whether they establish the legal arguments required for relief. And that's precisely what we're saying here, Your Honors, that the factual findings with regard to Altor's inability to pay, the question of the health deductible reimbursement plan using monies from the employees, not Altor's money, and the issue of whether paying legitimate business expenses allows the company to stay in business are all reviewable by Your Honors. But the key fact that's missing... Well, hold on. Before you get too deeply into the facts, I'd like to explore a little more what Chief Judge Smith had to say. So you're advocating for de novo standard of review, right? Well, there's no question that the rulings of law, the conclusions of law are de novo. I'm saying on facts. Right. How you apply the facts to the law according to the McAllen case, this court has said. It's de novo. Was that the same set of circumstances as here, though? Well, this was a case where the facts were stipulated, which is one of the exceptions in the review. I just wonder how... I mean, maybe we could explore a little bit. How would de novo review work in this court? I mean, I can understand in a trial court how they might have de novo review. They could have a hearing. We don't do that. We're a reviewing court. So how does that... If I was writing a remand order, I would direct that the master make certain additional findings. That's true, but that doesn't answer the question, though. At some point, you may say, I don't agree. He saw this, don't agree. How do we apply de novo review in this court? Well, if you defer to his factual findings, you still have to apply them to the law. And the inability to defend... Okay, but that's the second step. How do we... He's got findings. What do we do with those findings? I think you're arguing we should be reviewing that de novo, which means there's no deference at all given to them. We're saying it's a de novo review, but in particular... But the import of Judge Shigar's question is that such de novo review is conducted then by a forum that lacks the same advantages, if you will, that a first instance court making factual findings has. For example, being able to watch a witness testify, being able to assess demeanor. All of that is not available to what is ordinarily a reviewing court on a cold record. That's correct, but there were no witnesses here, Your Honor. Now, if you don't accept my argument that de novo review of the facts is applicable here... Stop right there, though. I mean, the point you make is a valid one. Would it be possible, would it be practical to adopt a rule of, or rather standard of review, that applied in those situations where the reviewing court is looking at either stipulated facts and or documents and similar forms of evidence and apply a different standard of review where testimony that is subject to questions of credibility are at issue? Well, I think that's why in the NLRB case versus Local 3, they deferred to the master because there were credibility findings. Here we're talking about tax returns and bank statements to show whether Altor had the ability to pay or not. But it goes further than that because the master found that Altor could have paid a modest sum. And doesn't this case really come down mostly to that? And I have to say that that is an aspect of this case that troubles me as it obviously troubled the master. I look back to the days when I was a state court judge and I would have parties in family court in front of me, support cases, where a parent was ordered to pay X number of dollars and the parent could have paid Y number of dollars, a lesser amount, but instead chose to pay nothing at all. And often that parent ran afoul of contempt for that very reason. How is it that we could countenance your client simply electing to pay nothing? Because the question is, did it have to change its business practice by either not paying a lawyer, not paying an accountant, or not paying health insurance, or not paying employees, all of which would have caused the company to go out of business? That's our argument. However, I want to get to the end of it. As long as they're legitimate business expenses, in the absence of payment of which the company would go under. That's not the purpose of the OSHA Act to put people out of business. That's our point. And I'm suggesting that if you remand the case to the master, they make a finding of exactly what he believed Altor could have paid. And that's very important because the second... That is absent from the recommendation. It's not there. It says a relatively modest amount. I don't know what that is. It's not $412,500. Why would he need to make such a finding when we know nothing was paid? Irrespective of what his finding would be as to the ability to pay a certain amount, it's clear nothing was paid. It's because the issue then becomes, what is the liability of Bill Sadies? And we contend, vociferously, that he is not personally liable. He has been found not personally liable for 20 years by three different courts, including this court. And he can only be liable in a derivative fashion. That is, if the master could tell us exactly what he believed Altor could have paid, that is the limit of Mr. Sadie's liability as an officer. The man's 90 years old. He never took a salary from this company. He doesn't own a share of stock in this company. He's been held not personally liable. And footnote four, your honors, is clear. When I read this opinion, I got to footnote four. It was clear to me that neither Bill nor Nick could be held personally liable. And at the end of the opinion, we find a personal liability. We find requests for disclosures of personal tax returns going back to 2012, when he wasn't liable. But he can only be derivatively liable, your honors. And that is a very, very important fact that I want to leave this court. This cannot be overlooked. That was an error of law, period. And without the finding of what Altor could have paid in the master's opinion, it leaves this door wide open to assess the entire fine against Bill Sadie's, which in essence makes him personally liable. Let me ask you this. Go back to the original question this morning. Let's assume that there were a remand and let's assume findings were made. Then what what is the review standard at that point? Well, presumably he would make a finding as to what Altor could have paid. And how is that reviewed? Well, the question is, if we would want to review it, I mean, that's a hypothetical question. It may be that the the the show cause provision in the master's order would carry the day after he made that factual finding, because then we would have we would have the target number. No, but when we reviewed the novel. If if we came back and said it's incorrect, but it can't be four hundred and twelve thousand four hundred twelve thousand five hundred dollars, it has to be. It can't be gross income. What deference is given to the master's findings? In this particular case, my argument is you have the right to the novel review, but specifically the question of what adequate, modest payments are. That needs to be decided. And I think the best way to do it is to remand it back to Judge Hammer because he's got all the documents. I also want to bring to the court's attention that there is an inconsistency in two of the recommendations towards the end of the opinion. The. Paragraph two of the recommendation is a look back. I'm sorry. A show cause for Altor and Bill to show cause whether they can afford to pay a fine. Paragraph three calls for a daily penalty. That's inconsistent. Also, paragraph six. Seeks bills, tax returns from 2012. Now, under any analysis, he was not personally liable in 2012. Up until this court makes a ruling and a finding on the personal liability. And again, it's derivative. He can only be responsible for what Altor could have paid. This is not punitive. It's supposed to be coercive. It's supposed to coerce the corporate entity to pay the fine. But you can't get blood from a stone. Wait. So you're you're saying 2012 shouldn't be part of this. Is that I'm saying with regard to Bill Sadie's derivative liability. If we go back and we find that Altor should have paid. And I'm going to throw out a number. One hundred dollars a week, which is what Altor took out of the employee's salary and put it in the fund to reimburse the deductible. As we all know, very high deductibles exist in today's insurance. And a lot of companies set up these deductible reimbursement plans. That's nothing new. And that's not personal. But if Altor could have only paid one hundred dollars a week, that's fifty two hundred dollars a year. So do the math. It's not five hundred four hundred twelve thousand five hundred. So in this Bill Sadie's derivative liability piece, we shouldn't have to go back to see what he had at the time. It's what Altor had. Now it's what Bill Sadie's has now to pay whatever that number is. Not. Seven years ago. And I might add that the secretary's brief makes a point in footnote 12. The amount that Mr. Sadie's will have to pay personally, as opposed to ensuring that Altor pays what it can remains to be determined. So once again, it is clear that this opinion, that this R&R has. Unfortunately, reconstituted personal liability in a full amount of the fine for Bill Sadie's, who has been found not personally liable by the OSHA Review Commission reviewing the Afcon case in April of 2011. The OSHA Review Commission on the Altor case in April of 2011 by Judge Yetman in the Altor case, affirmed again by the OSHA Review Commission and more importantly, affirmed by this court. Bill Sadie's has no personal liability and paragraph four. I'm sorry. Footnote four is a clear recognition by the master. The undersigned has construed the decrees to apply to Vesalios, Bill Sadie's and Nicholas Sadie's in their capacities as officers or employees of Afcon and Altor, not to have required them individually to satisfy the decrees from personal assets. So why would you go back to 2012 to see what he had as personal assets? If you reserve time for rebuttal, Mr. I wasn't allowed to and I see I'm out of time, but. Would you like two minutes? I would appreciate two minutes. Thank you. Mr. Gottlieb. May it please the court. Ron Gottlieb for the Secretary of Labor. I'll address the standard of review issue first. And the court adopted the clearly erroneous standard as the appropriate standard of review for proceedings in the appellate court in this type of proceeding. It didn't adopt the rule in the standard of view because it felt it had to apply the same rule that the district court applies when reviewing special masses. Based on the authorities that it cited, it adopted the rule because it's the same rule that applies when it reviews district court findings. And also it was the same rule that had been applied before there were even federal rules of civil procedure. There's simply nothing in the amendment to Rule 53 that applies to district court proceedings that says that the clearly erroneous standard is no longer appropriate for court of appeals proceedings. So we don't we don't have any. There's nothing on that. Right. I mean, I. Other courts relied on the old civil rule. Right. Only the case law. But the court could adopt the rule through rulemaking if it wanted to. And, of course, it could consider the issue en banc. Those are the best ways for the court. Well, unless there was intervening authority, which a change in a rule might be. But what's the department? So the department's position is in all these cases that it's it's clearly erroneous. That's a pretty high hill. Well, that's what the precedent establishes. If the court believed that de novo review is more appropriate, it could do either en banc or. I asked your friend that about how would de novo review even work in this in this court? Well, it would be hard. And that's one of the reasons that that's probably one of the reasons that it's adopted. It certainly could in a case like this where there's only papers that are being construed. But the court is really looking for a rule that it should apply uniformly. And before the Supreme, the Supreme Court has a rule that it gives some deference, but not clearly erroneous type deference when they have original jurisdiction and they and they and they appoint a special master. Is it would that be appropriate? Well, I don't think it would be appropriate to switch it at this for this panel to make that switch. It could be an appropriate standard to adopt in either en banc or in a rule by adopting a rule. And I would agree. Another middle ground that that the court could consider is in this future order, appointing a special master saying it's going to adopt a clearly erroneous unless the parties agree to de novo or agree to some other standards like the Supreme Court. But I don't think the court should be changing the rule in the middle of a case at the urging of a party who's seeking to have the special. But I mean, it wasn't wasn't the old civil rule. It's sort of the sole rationale for going clearly erroneous. Well, no, it wasn't the only rationale. The rationale was also that that's that's how they review district court's findings of fact. And also, I think it's because of the practical difficulties that you've pointed out in having de novo. It's just not the appellate courts, either by tradition or function or the limitations of their structure to have de novo fact finding. Presumably they could be worked out. You could have a hearing, you know, and have the three of you decide, you know, decide how you decide any other matter. But there are these structural and traditional factors that I think weigh pretty heavily into saying that the amendment to Rule 53 just is not the type of authority that undermines the precedent establishing the clearly erroneous. Well, unless my colleagues have any more questions on that, do we even need to get to that issue? Well, no, I don't think you have to get to the issue, but I think I'm going to clearly erroneous, even under the noble standard. And they're in contempt for not having made any payments in towards a decree. Was the special master required to make some finding with respect to this instead of. No, I don't think I need not deal with this because no, no effort was made to come up with a lesser figure. I don't think they had to come up with a figure as to what he could have paid because they didn't show that they couldn't pay the entire amount. And despite all the discovery that was provided was obviously not sufficient to establish Alator's ability to pay. They rely on their tax returns and the bank statements, but these are just not sufficiently reliable indicators of Alator's financial ability to pay expenses. For example, in the dissenting commissioner's opinion in the case that led to the court's decree, Alator's tax returns for 1996, 1997, and 1998 showed that it had negative income or no income and that its capitalization was $1,000 or $10,000. Yet Alator was able to finance the first 60 days of the project, of the construction project, at a cost of estimated of approximately $1 million. So the information available to the special masters just didn't show that they couldn't make payments. For the documentation before the special master, the later returns and the bank statements, the important fact is that it shows that they were able to meet their expenses and they often had thousands of dollars left over on a monthly basis. And they were able to meet their expenses from revenue from Daskon, a company that was completely controlled by Basilio States. And if their reply brief is to believe, they also received some money from Teresa States. But just as they were able to have it, your friend argues, well, this guy wasn't even a shareholder. He just, he was involved in management. How do you respond to that? That's all I'm talking about. Yeah. Well, his responsibility as an officer required him to use the resources available to Alator to pay their penalty. In addition, he was also a resource for the company. He had made loans, too. If a company has means to pay through loans, they have to show why they can't continue to get those loans before they can just ignore the court order. And the A Circuit has held that, first of all, so there's no evidence that paying towards a decree would have cost them to go out of business. There's also no evidence that they had to spend the money that they spend on attorney's fees, accounting expenses, and the personal medical expenses of employees, or even health insurance. And regarding the personal medical expenses, they claim that it was from the money withheld to pay for the insurance deductible. There's absolutely no evidence that the amount withheld for the covered insurance deductible accumulated over several years. That was just made up in their reply brief. There is evidence, however, that they returned 5,200 to Teresa Sates at the end of 2012. That's the same amount that they withheld that year to cover the deductible. They also claim that Teresa Sates, their suggestion that that payment was repayment of a loan, is directly contradicted by their statements to the special master and the secretary that all payments to Teresa were for salary. In addition, there's no evidence that Teresa Sates made loans to the company. There's some evidence that she made deposits, but there's no evidence to what the deposits were. But even if they were loans, they would still be out towards resources that they used for her personal medical expenses. And it makes no economic sense for her to loan the company so they could reimburse her for her own personal expenses. And regarding personal liability, I think it's important to point out that the commission expressly stated it was only finding that he was not an employer in 1998. They expressly said they were not making any finding that he would not be personally liable in a collection action. And I don't think that – I think it's premature to say whether the money that he pays or makes sure is paid is coming from his personal account or is money that should be available to Alta. And that's what the purpose of getting all the financial information that the special master recommended. Unless there are any further questions. Well, how do you envision this? We've got Judge Hammer's lengthy opinion and a bunch of recommendations. Do you – it's a straight affirm for you? Well, the court has to enter an order either – we agree. Yeah, I agree. We should hold them in contempt. In other words, do you agree with his recommendations? Yes, we agree with the recommendations. If the court believes there's other remedies that's more likely to coerce compliance. Well, I get that. But what is your position as to the recommendations? You're urging us to – We're okay with the recommendations. We didn't object to the portions that they want confirmed. So we're okay with affirming that. I mean, there's some people being let off the hook, right? Yeah, and, you know, I can't say if the standard of review was relevant to our decision not to object to those findings. You know, so I'm not going to claim prejudice or say that we should get a second bite of the apple of that. But, you know, the fact is we didn't make the objection, so we're willing to stand by that. But that is another reason not to switch the standard of review in the midcourse. Okay. Thank you very much, Mr. Gottlieb and Mr. Sanders. Your Honor, I'll be very brief. First of all, we showed that the company was legally insolvent under any definition, be it the definition in SEC v. Masella, the definition in Black's Legal Dictionary, or Webster's. We had more debt than assets, and we weren't able to pay our bills in full. And if you included the judgment, we were woefully insolvent. As far as discovery, we produced every piece of paper that Altor had after the decree until the close of discovery. We produced checks, check stubs, bank statements, tax returns. So I don't know what else was missing. We produced everything. And what it showed was that these expenses were appropriate. There were no payment of personal expenses. It was a reimbursement from monies that the people otherwise would have put in their pocket from their salary. And there's been no bankruptcy filing since the briefing or anything, right? No. But the statement that the attorney's fee shouldn't have been paid, well, I take exception to that. Three out of five of the findings were in favor of my clients. So my firm accomplished something in this proceeding. So to say that the respondent shouldn't have had legal counsel and paid the decree, I — But the master did not say that. No, he didn't, but he didn't say what expenses should be shaved to pay that moderate sum. That he didn't say. And that's what's missing here. That's the linchpin of this entire case, is what amount was Altor able to pay. Thank you. Thank you, Mr. Sanders. Thank you, Mr. Gottlieb. The panel will take the matter under advisement, and we will ask the clerk to recess the proceeding.